```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


James Spears,                    :

       Plaintiff,                :

    v.                           :     Case No. 2:12-cv-0725

Commissioner of Social           :     JUDGE ALGENON L. MARBLEY
    Security,                          Magistrate Judge Kemp
                                 :
       Defendant.
```

REPORT AND RECOMMENDATION

I.  Introduction

Plaintiff, James Spears, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for disability insurance benefits.  That application was filed on December 21, 2007, and alleged that plaintiff became disabled on May 18, 2007.

After initial administrative denials of his application, plaintiff was given a hearing before an Administrative Law Judge on May 20, 2010.  In a decision dated August 11, 2010, the ALJ denied benefits.  That became the Commissioner's final decision on June 13, 2012, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on October 15, 2012.  Plaintiff filed his statement of specific errors on November 16, 2012.  The Commissioner filed a response on December 20, 2012.  Plaintiff filed a reply brief on January 4, 2013, and the case is now ready to decide.

II.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 53 years old at the time of the administrative hearing and who has an eleventh grade education, testified as follows.  His testimony appears at pages 56-72 of

the administrative record.

Plaintiff testified that he suffered a heart attack in 1992. In 2007, he underwent a defibrillator implantation. It is that condition which prevents him from working. He has been told by his doctor to exercise and he does so on occasion, but has fewer sharp chest pains if he does not exercise.

In response to questions from his attorney, plaintiff said that his last job was in 2007, driving a gasoline truck. He did that for more than twenty years. That job involved lifting from ten to twenty pounds.

Plaintiff experienced fatigue on a daily basis. In a typical day, he made breakfast, did dishes, and watched television. He also cooked simple meals and spent time talking to family members on the telephone. He was able to practice casting a fly rod. He could lift up to twenty pounds, but not repetitively. He has found that washing the car or doing yard work was too strenuous. He napped twice a day and spent a good deal of time lying down. Even when working, he had the feeling at times of being dizzy or ready to pass out, based on his heart going out of rhythm. That caused him to work sporadically throughout the week rather than in concentrated blocks of time.

### III.  The Medical Records

The medical records in this case are found beginning on page 194 of the administrative record. The pertinent records can be summarized as follows.

Plaintiff was admitted to Berger Hospital in Circleville on May 19, 2007 after a fainting spell at dinner. His admitting diagnoses were syncope and collapse. He underwent a series of tests to determine the cause. Plaintiff reported that he had been doing 3 miles on a treadmill 4-5 times per week without chest pain or shortness of breath. The assumption was that he suffered from a scar-related arrhythmia. Notes also showed

episodes of bradycardia. A heart catheterization was done which showed left ventricular systolic dysfunction consistent with ischemic cardiomyopathy. He was transferred to Mount Carmel West Hospital in Columbus for implantation of an internal defibrillator. (Tr. 194-294). A follow-up note from November 5, 2007 showed that plaintiff had done well since the implantation, reporting no chest pain, shortness of breath, claudication or fatigue. (Tr. 314).

Plaintiff saw Dr. Nichols on February 22, 2008 for purposes of determining if he could return to work as a commercial driver. He also told Dr. Nichols he was doing well. He apparently had one self-correcting episode of non-sustained ventricular tachycardia the previous November. However, based on Ohio and federal safety regulations, Dr. Nichols concluded that someone with a defibrillator or a diagnosis of syncope could not drive commercially. (Tr. 339). In March, 2008, Dr. Gahman, a state agency reviewer, examined the records and concluded that plaintiff could do light work with a restriction on heights, hazardous machinery, and no commercial driving. (Tr. 353). Another state agency reviewer, Dr. Albert, later confirmed that conclusion. (Tr. 368).

Plaintiff followed up again with Dr. Handel, his cardiologist, on May 5, 2008. Up to that time, his defibrillator had never discharged, but he reported that upon working two to three hours, he developed severe fatigue and shortness of breath. It was noted that his last cardiac catheterization showed an ejection fraction of less than 35%. Dr. Handel stated that "[p]resently, he is not able to continue gainful employment due to continued symptoms and his need to rest at least [one-half] hour for every two hours of physical activity." He also did not think plaintiff was a candidate for rehabilitation "because of his marked disabilities and low ejection fraction." (Tr. 362).

Plaintiff was referred to Dr. Baig by Dr. Handel for consultation on a number of occasions. In May, 2008, Dr. Baig reported that a physical examination was normal and that the implanted device was functioning well. There had been two episodes of ventricular arrhythmias, the longest of which lasted for two seconds. Plaintiff's coronary artery disease and ischemia were both described as stable. (Tr. 366-67). Plaintiff continued to see Dr. Handel. One note from 2009 shows that he was doing well without complaints of chest pain, shortness of breath or fatigue. (Tr. 384). Another showed that he reported some mild shortness of breath on exertion and that he had one episode of chest pain in the last six months. In that note, Dr. Handel repeated his statement about plaintiff's need to rest a half hour every two hours during physical activity due to fatigue. (Tr. 387).

Plaintiff took a cardiac stress test on November 20, 2009. The results showed that he was able to exercise for nine minutes and 42 seconds and to achieve a maximum heart rate of 152 bpm. There was no stress-induced ischemia. The calculated ejection fraction was 31%, which was characterized as a moderate overall reduction in left ventricular ejection fraction and global left ventricular function. (Tr. 393). Finally, Dr. Handel wrote a letter describing plaintiff to be functional Class II-III of the New York Heart Association, which plaintiff contends is consistent with being comfortable at rest but developing fatigue upon exertion. (Tr. 406).

### IV. The Vocational Testimony

A vocational expert, Ms. Kaufman, also testified at the administrative hearing. Her testimony begins at page 72 of the record. She characterized plaintiff's past work as a fuel oil delivery driver, which plaintiff performed at the light exertional level. That job is semi-skilled.

Ms. Kaufman was asked some questions about a hypothetical person who could perform the exertional demands of light work, with some restrictions on climbing and exposure to hazardous machinery or unprotected heights, and also lacking the ability to operated motorized vehicular equipment. With those restrictions, that person could, in Ms. Kaufman's view, not do plaintiff's past work. However, someone with those restrictions could do a good range of light and sedentary work, including about seventy percent of the light occupations, which translated to 52,000 jobs in the regional economy. Jobs such as cashier, sales attendant, and cleaner would fall into that category. If the person needed to change positions between sitting and standing every thirty minutes, the job base would be reduced significantly, but twenty percent of the light jobs would still be available. If the person could lift but not carry twenty pounds, that percentage went down to ten percent, and it went down to under five percent if the person had both of those restrictions. No work would be available to someone who would be off task for 30 minutes every two hours, however.

V.  The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 14 through 25 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured requirements for disability benefits through December 31, 2012. Next, plaintiff had not engaged in substantial gainful activity from his alleged onset date of May 18, 2007 through the date of the decision. As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including a remote history of myocardial infarction and percutaneous translumenal coronary angioplasty, status post internal cardiac defibrillator implantation for

ventricular tachycardia, ischemic cardiomyopathy, coronary artery disease, congestive heart failure, borderline type II diabetes mellitus, hyperlipidemia, and nicotine dependency.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform light work but with restrictions on climbing ropes, ladders or scaffolds, working around hazardous machinery or unprotected heights, and operating motorized vehicular equipment.  The ALJ determined that, with these restrictions, plaintiff could not perform his past relevant work, but he could perform those jobs identified by the vocational expert, such as cashier, sales attendant, and cleaner, and that significant numbers of such jobs existed in the regional, state and national economies.  Consequently, the ALJ concluded that plaintiff was not entitled to benefits.

VI.  Plaintiff's Statement of Specific Errors

In his statement of specific errors, plaintiff raises two issues.  He argues that the ALJ erred in failing to accord proper weight to the opinions of the treating specialists, and that the ALJ did not properly evaluate his subjective complaints of pain given his documented heart condition.  The Court generally reviews the administrative decision of a Social Security ALJ under this legal standard:

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"  Richardson v. Perales, 402

-6-

U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

As to plaintiff's first assignment of error, here, the ALJ explained his decision to give little weight to Dr. Handel's report about plaintiff's need to rest for one-half hour during every two hours of exertion in this fashion:

> The May 21, 2008 opinion by Dr. Handel that the claimant was not a candidate for rehabilitation *or* employment due to his marked disabilities and low ejection fraction (Exhibit 10F), is entitled to very little weight.  Ordinarily, treating source opinions are to be given controlling weight if well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence....  The physical residual functional capacity assessed by Dr. Handel is not only inconsistent with the overall objective medical evidence, including the doctors (sic) previous examinations and treatment notes, it is inconsistent with his examination and assessment performed on the same day his opinion was made....  It appears that the

> doctor relied quite heavily on the subjective reports
> of symptoms and limitations reported by the claimant
> and seemingly accepted uncritically as true most, if
> not all, of what the claimant reported. Given the
> foregoing, the residual functional capacity assessed by
> Dr. Handel is not an accurate representation of the
> claimant's physical residual functional capacity
> status. As the residual functional capacity assessed
> by Dr. Handel is not an accurate representation of the
> claimant's physical residual functional capacity
> status, it is therefore entitled to little weight.
>
> Further, a November 21, 2008 office visit note shows
> that even though having "done well from a cardiac
> standpoint" the claimant's denial of any "chest pain,
> palpitations, syncope or transient ischemic attacks,"
> the claimant continued to rest at least thirty minutes
> every two hours when he does any physical activity
> because of marked fatigue" (Exhibit 16F). Despite
> argument by the claimant's attorney at the hearing that
> Dr. Handel's notes was (sic) the equivalent of a
> medical source statement of prescribed limitations, the
> undersigned finds that his notes were merely a
> recitation of the claimant's stated symptoms and his
> own response to those symptoms.

Tr. 19. Plaintiff asserts that this assessment is erroneous, while the Commissioner argues that it is both an adequate statement of reasons for rejecting Dr. Handel's report and that it is properly supported by the record.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(d); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir.

1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living.  Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).  No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

   Plaintiff does not appear to be arguing that the rationale provided by the ALJ does not meet the articulation requirement explained in cases such as Wilson and Rogers v. Comm'r of Social Security, 486 F.3d 234, 242 (6th Cir. 2007), but rather that the reasons given by the ALJ for according only slight weight to Dr. Handel's (and also Dr. Baig's) opinions are not supported by the record.  More specifically, plaintiff contends that Dr. Handel's opinion, rather than being inconsistent with his own treatment notes and the overall medical record, is "very much supported by the objective medical findings ...."  Plaintiff's Statement of Errors, Doc. 8, at 8.  He cites to the multiple tests showing an ejection fraction of less than 35%, the fact that testing reported by Dr. Handel on May 20, 2010 showed severe hypokinesis of multiple segments of plaintiff's heart muscle, and the fact that both Dr. Handel and Dr. Baig rated plaintiff's condition as either functional class II or functional class III of the New York Heart Association.

   Taking this last statement first, the record before the Court does not appear to explain what such a rating means. However, to the extent that the Court may take judicial notice with regard to that matter from the American Heart Association's

-9-

website (www.heart.org), Class II functional capacity describes "[p]atients with cardiac disease resulting in slight limitation of physical activity.  They are comfortable at rest.  Ordinary physical activity results in fatigue, palpitation, dyspnea or anginal pain," and Class III describes "Patients with cardiac disease resulting in marked limitation of physical activity.  They are comfortable at rest.  Less than ordinary activity causes fatigue, palpitation, dyspnea or anginal pain."  It appears to be plaintiff's argument that even if his degree of functionality is Class II, which involves, by definition, only "slight" limitation of physical activities, he would be limited to sedentary work, and would therefore be considered disabled.

     One major problem with this argument is that neither Dr. Baig nor Dr. Handel ever equated this classification with the ability or inability to perform any specific work activity.  It is somewhat of a stretch to conclude that someone who becomes fatigued to some unknown degree when doing any activity other than resting cannot do even a limited range of light work, as opposed to being capable of only sedentary work, and the record does not compel such a finding on the ALJ's part.  In other words, the ALJ did not have to treat the bald statement by either doctor that plaintiff's condition was Class II or Class II-III as an opinion of disability or an opinion of limitation to solely sedentary work without a physician specifically saying so.  Cf. Ray v. Sun Life & Health Ins. Co., 752 F.Supp. 2d 1229 (N.D. Ala. 2010)(physician equated Class I or II functionality with being able to perform a range of light work).  That means that there is no opinion from Dr. Baig that would translate into functional limitations consistent only with light work, and that the only statements from Dr. Handel which the ALJ might have had to construe as treating source opinions inconsistent with light work were the two statements he made about how much rest plaintiff needed while performing physical activity.

Taking those statements in reverse order, the second of them, found in Dr. Handel's report of November 21, 2008, reads in full as follows: "He still continues to rest a (sic) least [one-half] hour every 2 hours when he does any physical activity because of marked fatigue."  The ALJ refused to consider this statement as an opinion from a treating source as to work-related limitations because it merely recited what plaintiff reported, as opposed to what Dr. Handel thought was the impact of plaintiff's heart condition.  A reasonable person could reach this conclusion.  The statement is clearly descriptive, and it must have been based on plaintiff's own self-report, because there is nothing in the notes to indicate that Dr. Handel actually observed plaintiff engaging in physical activity for any length of time.  However, it is also duplicative of the statement in the earlier notes, which the ALJ did treat as an opinion, so any error in the way the ALJ characterized this statement is harmless.

In the earlier office note, dated May 5, 2008, Dr. Handel phrased his statement slightly differently, saying: "Presently, he is not able to continue gainful employment due to continued symptoms and his need to rest at least [one-half] hour for every two hours of physical activity."  (Tr. 362).  Assuming this to reflect Dr. Handel's own opinion as to plaintiff's physical capabilities, the ALJ rejected it for two reasons - because of a perceived inconsistency with the medical evidence, and because it appeared to be drawn heavily from plaintiff's own self-report and not based specifically on any medical procedure or clinical test.

As with the November, 2008 statement, it does appear that the primary source of information which Dr. Handel relied on for this opinion was plaintiff's own report of what occurred when he attempted physical activity.  The statement is found in the section of the notes labeled "History of Present Illness," which usually reflects what a patient tells his or her doctor about

what is happening.  The results of the examination which took place that date, and the doctor's impressions, are reported elsewhere.  The examination was essentially normal except for the EKG showing "evidence of an old extensive anterior wall MI."  The defibrillator appeared to be working as intended and delivering "good long term results."  Dr. Handel did state that plaintiff was not currently a candidate for employment due to "marked disabilities," but he did not provide any functional capacity assessment beyond that found in the statement about how often plaintiff rested during physical activity.  Again, it is fair to conclude that this statement was primarily derived from the plaintiff himself, and to the extent that the ALJ had good reasons to discount the plaintiff's credibility - the subject of his second assignment of error - the ALJ was also entitled to give reduced weight to any medical opinion which relied on the plaintiff's self-reported symptoms.  See, e.g., Hatfield v. Comm'r of Social Security, 2012 WL 2504283, *7 (S.D. Ohio June 28, 2012), adopted and affirmed Case No. 2:11-cv-341 (S.D. Ohio August 7, 2012), citing McGlothin v. Comm'r of Social Security, 299 Fed. Appx. 516 (6th Cir. October 31, 2008).

    It is less clear that the ALJ had a reasonable basis for concluding that Dr. Handel's views about plaintiff's work abilities was unsupported either by Dr. Handel's treatment notes or other medical evidence of record.  The medical evidence is clear that plaintiff had heart damage from his prior myocardial infarction and that his ejection fraction consistently fell below 35%.  Although no physician commented expressly on the significance of that finding, it is substantially lower than normal and close to the finding needed to establish disability under the Listing of Impairments.  Dr. Gahman did not comment on that finding in his report, and he appeared to believe that plaintiff's report of symptoms (at least up to that point, which was in March, 2008) was consistent with the medical evidence.

Dr. Albert, who reviewed and affirmed Dr. Gahman's residual functional capacity finding, would have had the benefit of Dr. Handel's May, 2008 report, however, and he apparently did not think that anything in that reported warranted limiting plaintiff to sedentary work.  That is at least some evidence that one state agency physician found some inconsistency between Dr. Handel's reported findings and his evaluation (if, indeed, it was his opinion) that plaintiff could not do any work or, at most, sedentary work.  Consequently, the ALJ's conclusion that there is such an inconsistency has some support in the record as well.  Given that both of the reasons he gave for discounting Dr. Handel's statement find support in the record, the Court cannot alter the ALJ's decision about how much weight should have been afforded to Dr. Handel's opinion unless it finds that the ALJ did not have good reasons to find plaintiff to be less than fully credible.  The Court now turns to that question.

 A social security ALJ is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking.  Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors.  20 C.F.R. §404.1529(c)(3).  Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not  have substantial support in the record.  See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).

 Here, the ALJ concluded that plaintiff's reports of disabling symptoms could not be accepted in full because, first, plaintiff's doctors had advised him to exercise, and it was he

who made the decision not to do so.  Second, he identified a variety of daily activities which were not completely consistent with the inability to do any physical activities.  Third, there are a number of medical records indicating that he was doing well and did not have symptoms of shortness of breath or fatigue. Fourth, he was able, at one point, to exercise on a treadmill to a fairly substantial degree.  These are all the kinds of factors which the ALJ is both entitled to and required to consider, and they all find some support in the record.

Plaintiff argues, however, that he should have been considered to be fully credible because he had sought medical treatment for his heart condition beginning in 1992 and that he consistently made efforts to obtain relief from his symptoms.  He asserts that the ALJ simply ignored this portion of the evidence. Other than that specific argument, however, his memorandum merely repeats the testimony he gave at the hearing without stating why the ALJ erred in not accepting it in full.  <u>See</u> Plaintiff's Statement of Errors, Doc. 8, at 13.

It is true that plaintiff has an extensive longitudinal history of treatment for his heart condition.  Much of that history, however, predates his alleged onset of disability date. After he stopped working, the major issue for which he sought treatment was his arrhythmia, and the records show that the defibrillator largely corrected that problem.  Even Dr. Handel's notes show that he was following up with plaintiff to determine the functioning of the defibrillator in addition to rendering treatment – and there was not much available treatment – for the continued effects of plaintiff's 1992 heart attack.  In short, this history of seeking treatment is not so compelling as to undermine the ALJ's credibility determination, which, as the Court has found, followed a correct analytical path and also relied on evidence which a reasonable person could have construed as a basis for discounting plaintiff's testimony to some extent.

In this case, the issue is not whether plaintiff has severe impairments or whether they affect his ability to do some work activities.  The question is how much they affect him.  The ALJ and the state agency doctors did not think he was precluded from doing a modified range of light work.  Although both plaintiff and Dr. Handel apparently thought otherwise, the ALJ, relying on evidence in the record, did not give full weight to their views.  On this record, that is a decision a reasonable person could have reached.  That being so, under the substantial evidence standard which the Court applies here, the ALJ's decision must be affirmed.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a

waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

        /s/ Terence P. Kemp
        United States Magistrate Judge